IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELISSA DAVIS and CHRIS DAVIS, individually and as next friend of their minor son, ARLIS "BUCK" DAVIS, <br><br> Plaintiff, <br><br> v. <br><br> ROBERTSON COUNTY SCHOOL BOARD OF EDUCATION, and CHRIS CAUSEY, individually, and in his capacity as Director of Schools for Robertson County Schools, <br><br> Defendants. | NO. 3:22-cv-00408 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY |

## MEMORANDUM

Before the Court is Defendants' Motion for Reconsideration of Order Denying Defendants' Motion to Enforce Settlement Agreement (Doc. No. 36 (concerning the Court's July 25, 2023 Order, Doc. No. 35), to which Plaintiffs filed a response in opposition (Doc. No. 38).

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). The Court finds reconsideration is warranted in this case. Accordingly, the Motion for Reconsideration (Doc. No. 36) will be **GRANTED**. Upon reconsideration, the Court's previous Order (Doc. No. 35) will be **VACATED**, and Defendants' Motion to Enforce Settlement Agreement (Doc. No. 25) will be **GRANTED**.

## I. PROCEDURAL BACKGROUND

Plaintiffs Melissa Davis and Chris Davis ("the Davises") initiated this action on behalf of their son Arlis "Buck" Davis ("Buck") (collectively, "Plaintiffs") challenging Defendants' decision to remove Buck from Greenbrier High School and assign him to an alternative school as punishment for possession of alcohol – a "zero-tolerance policy violation." (*See* Doc. No. 1). Plaintiffs brought claims against Defendants Robertson County School Board of Education and Chris Causey, Director of Schools for Robertson County (collectively, "Defendants") for violations of procedural and substantive due process (Counts I and II), failure to train/supervise (Count III) and negligence (Count IV). As relief, Plaintiffs sought (1) for Buck to be returned to Greenbrier High School; (2) to enjoin Defendants from taking any action against Buck as a result of the zero-tolerance policy; (3) declaratory judgment exonerating Buck and clearing his student record of the charge; (4) compensatory damages; and (5) attorneys' fees. (*Id.*). The case was originally filed in the Chancery Court of Robertson County, Tennessee, on May 4, 2022, and removed to this Court on June 3, 2022. (*See* Doc. No. 1).

On July 29, 2022, Plaintiffs filed a motion for preliminary injunction seeking an order requiring Defendants to enroll Buck in the Greenbrier High School on the first day of the 2022-23 school year – August 8, 2022. (Doc. No. 14). The Court set a hearing for August 17, 2022. (Doc. No 16).

The weekend leading up to the first day of school, attorneys for the parties conferred in an attempt to settle the case. (*See* emails between counsel dated August 5-7, 2022, Doc. No. 26-1). Although the parties now dispute whether a settlement was reached, the outcome of these discussions was that Buck returned to Greenbrier High School on August 8, 2022, and on Saturday, August 13, 2022, Plaintiffs filed a Notice of Settlement. (Doc. No. 20).

On September 8, 2022, Plaintiffs moved to reopen the case, to strike the Notice of Settlement, and for a temporary restraining order. (Doc. Nos. 22, 23, 24). On the same day Defendants moved to enforce the settlement agreement. (Doc. No. 25). The Court initially denied the motion to enforce settlement agreement and granted the motion to strike the Notice of Settlement. (Doc. No. 35). The Court now reconsiders that ruling.

## II. STANDARD OF REVIEW

A district court has the inherent power to enforce a settlement agreement between parties in litigation. *Bamerliease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). A court can exercise this power "even if that agreement has not been reduced to writing." *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985). "Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x. 494, 498 (6th Cir. 2013)).

"Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645-46 (6th Cir. 2001). A district court must resolve the question of fact as to "[w]hether the parties actually reached an agreement." *Moore v. U.S. Postal Serv.*, 369 F. App'x. 712, 717 (6th Cir. 2010). "Summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc.*, 271 F.3d at 646.

"While ordinarily the district court must hold an evidentiary hearing where facts material to an agreement are disputed, the court may summarily enforce a settlement agreement where an agreement is clear[,] and no issue of fact is present." *Bowman v. Assurance Co. of Am.*, No. 3:07-

3

Case 3:22-cv-00408   Document 39   Filed 03/25/24   Page 3 of 12 PageID #: 504

CR-388, 2009 WL 311112, at *1 (E.D. Tenn. Feb. 6, 2009) (quoting *Bobonik v. Medina Gen. Hosp.*, 126 F. App'x 270, 273–74 (6th Cir.2005)(internal quotations omitted)); *see also RE/MAX Int'l, Inc.*, 271 F.3d at 646 (stating that "no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present").

### III. ANALYSIS

#### A. Settlement Negotiations – August 5-7, 2022

The parties' settlement negotiations are reflected in a series of emails between counsel on August 5-7, 2022. (*See* Doc. No. 26-1). Defendants contend these emails resulted in a binding settlement agreement. Plaintiffs argue no agreement was reached because the parties did not reach a meeting of the minds as to key terms, as reflected by their subsequent inability to memorialize an agreement in writing. The email correspondence between counsel is as follows:

On Friday, August 5, 2022, counsel for Plaintiffs, emailed counsel for Defendants:

> Hey Tony. Thanks again for your time this morning.
>
> We propose that if we can get Buck back into school at Greenbrier on August 8, we reserve the following issues for further discussion. As you can see, this is a significant departure from our last settlement offer, taking into consideration the various changes in circumstances and policies. I would also propose again that we try mediation, and our clients have agreed to that. My instincts tell me that having a third party weigh in would be invaluable to both sides. I don't see any way that we can put pen to paper and have all the necessary discussions with our clients by Monday so that the lawsuit can be dismissed by then, but that would be the final outcome of this process. You will also note that this proposal does not include the payment of any damages or attorney's fees or costs. Obviously, we would immediately strike our motion for a preliminary injunction to avoid the significant time, expense, and inconvenience to both sides to prepare for a hearing on August 17. Here are the issues our clients would like to discuss:
>
> 1. The specific language used to address Buck's academic record and his attendance at the Phoenix Academy. It sounds like this is not a big issue for you and Dr. Causey, but we would like to see actual language and have time to consider it.

4

2. Potential reforms to the DHA process, including the development of forms and/or information to be given to parents outlining the DHA procedure, including appeals. As we discussed, this was a tipping point for our clients.

3. Potential reforms to require additional training to relevant school administrators and staff (including SROs) regarding the investigation and prosecution of student discipline cases to promote compliance with RCSB policy, and state and federal law.

(Doc. No. 26-1 at PageID# 375-376).

Counsel for Defendant responded the same day:

I spoke with my client and here are their thoughts:

First, if we can somehow come to an agreement, Dr. Causey would have to contact each board member to get him started on the 8th.

- His attendance at RCPA: He was present at a different school in Robertson County. Nowhere on his transcript does it say "Alternative School". It simply says RCPA. His suspension days could be exchanged for excused absences.

- DHA Process: Dr. Causey stated they will continue to work with their board attorney to develop procedures that are best for all students. Dr. Causey stated the Davis[es] were given all the information other parents are given during the process and he is not going to allow the Davis[es] dictate what those procedures are. I'm not sure how we get past this one.

- Require additional training to relevant school administrators and staff (including SROs) regarding the investigation and prosecution of student discipline cases to promote compliance with RCSB policy, and state and federal law: According to Dr. Causey this is something they are already doing, however, the SRO's do not work for Robertson County Schools … they work for the Sheriff's Dept.

I'll be working on and off all weekend, so I will be around to work on this further as needed.

(*Id*. at PageID# 374-75).

Following additional emails about how Buck's return to school would be worded, the following morning counsel for Defendant emailed, "What is your proposed language if we agree

5

he comes back on the 8th?" (*Id*. at PageID# 373). Counsel for Plaintiff responded, "I am also trying to be mindful that this settlement can't be confidential, so the simpler we keep it the better." (*Id*.). Counsel for Defendants replied, "I agree. What are the proposed terms[?] Any settlement will need a non-disparagement clause and your clients would need to take down that Facebook page they are using to blast RCBOE, Dr. Causey, etc." (*Id*. at PageID# 372). Later that morning, Counsel for Defendants wrote: "I just need to know what the proposed terms are. If we are just saying Buck goes back on the 8th and we just figure out the wording, then I'll contact Dr. Causey now. Otherwise, I need to know any other proposed terms before I reach out to him." (*Id*. at PageID# 371-72).

Around noon that day, counsel for Plaintiffs wrote: "It appears we are heading back towards the initial offer Sam made (that was rejected) and that you have made (again rejected); that amounts to the Davis family dismissing the lawsuit and Buck starts back at GBHS on Monday. Am I missing something more that your clients are offering?" (*Id*. at PageID# 370).

Defense counsel responded:

> You sent me Rob's new demand yesterday. I provided you with Dr. Causey's response. The next thing I heard was how to classify Buck's return and that was all that was mentioned. There was no mention of the other two items we were discussing yesterday. My impression, and I admittedly could have read into it incorrectly, was that you were fine with what RCBE was already doing on the other 2 terms and now we were only addressing Buck's return in order to resolve the case.

(*Id*. at PageID# 370).

Counsel for Plaintiffs replied:

> I am really not trying to complicate it. Am I correct that where your client is at this moment is: the Davis[es] dismiss the lawsuit and Buck goes back to school on Monday?

> Please advise if this is the case. If there are additional concessions on behalf of your client, please identify those and I will communicate same to the Davis family and get you a response.

(*Id*. at PageID# 369).

Defense counsel responded later that evening:

> I heard back from Dr. Causey. His position is what we set forth below about the DHA process and training … they are already doing training. They continue to work with their corporate counsel on the DHA process. So it really comes down to Buck returning on Monday.

(*Id*.).

The email exchange continued the following afternoon, Sunday, August 7, 2022, which was the day before the first day of school. At 1:56 p.m., counsel for Defendant wrote to Plaintiffs' attorneys, "Have you spoke[n] to your client about the information set forth below? Dr. Causey's position is they are already doing training and working on policies, etc." (*Id*. at PageID# 368). Plaintiffs' attorney indicated that he was speaking with his client and would "advise shortly." (*Id*.).

That evening, at 6:49 p.m., Plaintiffs' attorney wrote:

> I just hung up with Melissa Davis. I believe we have an agreement on the following:
>
> 1. Buck returns to GBHS tomorrow.
>
> 2. Alcohol Policy change (had already been done)
>
> 3. The training we have been discussing and your response to same.
>
> Melissa is concerned about Buck returning tomorrow and being subject to extra scrutiny / retribution from the teachers/admin. Some form of assurances from your clients related to this are necessary and may assuage that concern.
>
> Finally, the non-disparagement is an issue. The Davis[es] have no intent to disparage. However, such a provision has been found to be unenforceable and unconstitutional. The Tennessee Court of Appeals recently ruled on these types of provisions. …here is the [link to Tennessean article].

7

Do you have time for a quick call after you have reviewed the above?

(*Id*. at PageID# 367-68).

Defense counsel responded, "I am just about to sit down for dinner with the family. So the terms as outlined below will settle the case in full?" (*Id*. at PageID# 367). Plaintiffs' attorney wrote, "Yes. As long as the disparagement/FB issue is dropped. And, assurances are made that protect Buck from retribution, etc." (*Id*. at PageID# 366). Defense counsel responded, "Having them running their mouth on Facebook is an issue. They are doing it as we speak posting that RCSB is holding Buck hostage." (*Id*.).

Plaintiffs' attorney responded at 7:55 p.m.:

> The non-disparagement/free speech issue is something that even if we agree to is not enforceable. We cannot agree to this. I went to great lengths to bring my clients to this spot. I hope that what a parent says about local politics and Dr. Causey (a public figure) on a Facebook page is not what prevents this from settling.
>
> Please let me know if we have an agreement as I set forth.
>
> I know it's late and we have all taken time from our families this weekend to bring this case to a resolution.
>
> Please advise.

(*Id*. at Page ID# 365).

After Defense counsel stated that "[t]he FB page is going to be a problem," Plaintiffs' attorney advised, "Melissa will take down the Facebook page on Tuesday (she cannot do it until that day as she is in COVID quarantine and has no access to her laptop – only her phone) and agrees not to post anything negative after a deal has been reached. This will be the last concession I can get them to make. Do we have an agreement?" (*Id*. at Page ID# 364-365). Defense counsel responded, "Dr. Causey is good with that." (*Id*.). Plaintiffs' attorney confirmed, "Perfect. Buck

8

Case 3:22-cv-00408    Document 39    Filed 03/25/24    Page 8 of 12 PageID #: 509

will be at school in the morning. Do you want first crack at the draft language and send it over in the morning?" (*Id*. at Page ID# 364). Counsel for Defendants agreed. (*Id*.).

The following day, Buck returned to Greenbrier High School. On August 13, 2022, Plaintiffs filed a Notice of Settlement. (Doc. No. 20). In the following weeks, the parties endeavored to memorialize the agreement in writing. They prepared seven separate drafts, none of which were acceptable to all of the parties.[1] (*See* Doc. No. 29, Exs. 1-7).

Emails between the parties indicate that the sticking points were with regard to wording reflecting the underlying reason for Defendants' obligations, not the obligations themselves. (*See* Doc. No. 26-2). In particular, with regard to the provision stating that Buck Davis would not be subject to any adverse actions or retaliatory acts as a result of the lawsuit, Defendants wanted to add "in accordance with state and federal law." Plaintiffs objected to this addition. As to Defendants' agreement to work to develop DHA process procedures and training regarding investigation and prosecution of student discipline cases, Defendants wanted to include language indicating that this was "done every year" and was something that would continue to be done. Plaintiffs objected to this language.

Plaintiffs' response to the motion to enforce settlement agreement confirms that these two issues were the "basis for the agreement's failure." (*See* Doc. No. 29 at 5). Plaintiffs explain that they oppose Defendants' proposed language because "[t]he Defendants want the agreement to

---

[1] Plaintiffs attached the drafts of the settlement agreement to their response (*see* Doc. No. 29 Exs. 1-7), but did not include any indication of which party proposed which drafts, the order in which the drafts were circulated, or a clear indication of which provisions were points of disagreement. Of course, the Court can observe differences between the drafts, but some changes may have been agreed. Without additional information, the Court is unable to discern from the drafts alone where the parties were unable to reach agreement. Accordingly, the Court has relied on the emails between counsel (Doc. No. 26-2) and the briefing for its understanding of the points of disagreement.

appear as though they are not taking any action in response to the Plaintiffs' lawsuit by requiring the settlement agreement to provide that the substantive reforms sought by the Plaintiffs' lawsuit are 'done every year.'" (*Id*.). Plaintiffs acknowledge that "inclusion of this language may seem trivial," but "it is not what Plaintiffs agreed to." (*Id*.).

**B.     Agreement**

The parties agree that the question of whether they entered into a settlement agreement in this case is governed by Tennessee law. (*See* Doc. Nos. 26 at 8, 29 at 4, 36 at 9 (citing Tennessee authority concerning contract formation)). Under Tennessee law mutual assent to a contract's material terms, also referred to as a "meeting of the minds," is an essential element of contract formation and enforcement. *See Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528 (Tenn. 2012) (stating that mutual assent to material terms is "black letter law"). "[M]utual assent is determined by an objective standard – that is, by the apparent intention of the parties as manifested by their actions." *Id*. (citations omitted).

Defendants contend the parties reached agreement as to material terms of a settlement as reflected in the emails between counsel indicating an agreement had been reached, Plaintiffs' filing the Notice of Settlement, Buck's return to Greenbrier High School on the first day of school, and the parties' attempts to prepare a written settlement agreement. (Doc. No. 36 at 9-10). Defendants also state that Plaintiffs "appear to have removed the contested Facebook page." (*Id*. at 10). Defendants assert that the remaining disagreement between the parties concerning the specific wording of certain terms of the settlement agreement does not concern material terms.

Plaintiffs disagree. Plaintiffs confirm that the areas of disagreement concern the wording of Defendants' obligation to make reforms to the Disciplinary Hearing Authority process, and reforms to training of employees who participate in the disciplinary process. (Doc. No. 29 at 5

("As the Court can see from the last version of the proposed settlement agreement, issues related specifically to those topics form the basis for the agreement's failure.")).

Upon this record, the Court finds the facts material to the settlement agreement are not disputed. Therefore, no hearing is necessary. The Court further finds that the parties agreed to the material terms of settlement, which were: (1) Buck would return to Greenbrier High School on August 8, 2022, which he did; (2) Defendants would update the policy pertaining to alcohol, which was acknowledged to have been completed; (3) Defendants would continue to train their employees on proper student discipline policies; (4) Plaintiffs would take down the Facebook page; and (5) Plaintiffs would dismiss all claims against Defendants in this case and execute a general release of claims.

The subjects upon which the parties could not reach agreement were simply not material to the agreement itself. Plaintiffs statements concerning their objections to the wording of the settlement show that their unwillingness to agree to Defendants' proposed wording is over the outward appearances of the settlement, not its material terms. (Doc. No. 29 at 5 (asserting that "[t]he Defendants want the agreement to appear as though they are not taking any action in response to the Plaintiffs' lawsuit by requiring the settlement agreement to provide that the substantive reforms sought by the Plaintiffs are 'done every year'")). But the way the agreement is perceived by the public does not affect the material terms. That being said, because this specific language is not material, the Court will not order Plaintiffs to agree to Defendants' proposed language. The terms of the parties' agreement are outlined above.

The Court further finds that neither party is solely at fault for the impasse over specific language of the settlement agreement or the subsequent litigation. Accordingly, an award of attorney's fees related to the enforcement of the settlement agreement is not warranted.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Reconsider (Doc. No. 26) is **GRANTED**, and the Court's July 25, 2023 Order (Doc. No. 35) will be **VACATED**. Upon reconsideration, Defendants' Motion to Enforce Settlement Agreement (Doc. No. 25) will be **GRANTED**, and Plaintiffs' Motion to Strike Notice of Settlement (Doc. No. 23) will be **DENIED**.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE